LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from a judgment denying appellant’s petitions for writ of error coram nobis. The two petitions filed by him relate to his previous conviction of murder. After his filing of the second petition, the court entered an order consolidating the two petitions for an evidentiary hearing, which was conducted commencing at 9:00 A.M. on October 12, 1982, the petitioner-appellant being present. His petitions were pro se; he appeared pro se for the hearing by arguing his petition to the trial court and conducting the examination of four witnesses called by him in support of his petitions. He has also filed a pro se brief on appeal. The petitions and the brief are not as clear and specific as they should be, but it appears that the basic complaints of petitioner-appellant are (1) that the trial judge made some racial slurs during the trial of the murder case, in which defendant, a black man, was convicted of murdering a black man and (2) that a juror or a prospective juror made some remark to the effect that “some black son-of-a-b.... may have killed his half bro. in Florida’s riot,” and (3) “that defendant did not have effective representation of counsel on the trial of the case in which he was convicted.”
The witnesses called by the petitioner on the hearing of the coram nobis petition related to a substantial extent that the trial judge had been heard to state in some of the proceedings on the trial of the defendant some racial aspersions that on their face would have been highly improper and prejudicial to defendant. However, their testimony was vague and uncertain as to the time, place and circumstances of such claimed utterances and as to whether the trial judge was the person who made the utterances.
It affirmatively appears from the transcript that whatever objectionable utterances were heard were repetitions of or allusions to the written report of a former probation officer, who was since deceased, as found in the probation officer’s report in connection with defendant’s application for youthful offender treatment. At the conclusion of the coram nobis hearing, the trial judge said:
“All right. Let me see the record here. All right, this case — the original appearance of the Defendant before this Court where the provisions of the Youthful Offender Act were explained to him, him *33 having been under the age of twenty-one (21) years at the time of the commission of the offense, and the Defendant made application for Youthful Offender status. A hearing was held on this application on August 20th, 1980. Mr. [name omitted here! was the Probation Officer in this county and at this time he is now deceased. He had prepared a Probation— or a pre-hearing report on the Youthful Offender matters. In that report Mr. Jones had stated some things in regard to the Defendant’s reputation in the community. It possibly did not have any business in the record at the Youthful Offender hearing. The record of this was prepared for appeal and filed in the Court December the 31st, 1980. The record reflects on Page 3 the Court stated ‘A hearing is being held on Application for Youthful Offender status. Do you have any testimony to be taken?’ Mr. Royal [defendant’s attorney on the trial of the case] stated ‘Judge, he and I have gone over the Probation Officer’s report and we have some exceptions to some of the contents, specifically, the report said that William and Buddy Craft were dating white girls and the statement tried to live like white men.’ And, Mr. Royal said ‘Judge, we move for those comments to be stricken from the record due to the irrelevancy and immaterial of these comments.’ And then the Court said ‘All-right, it will be stricken. Neither comment will be considered by the Court.’ Mr. Royal said ‘I would like to call Buddy Craft.’ Mr. Royal has since discontinued the practice of law in Scottsboro and is now practicing law in Houston, Texas. I think that record truly and accurately reflects the statements and comments that were made at the time of that hearing. In regard to the allegations of the statement made by the juror, the case action summary sheet and entry was made on September the 15th, 1980 by the Court as follows ‘All parties are present and the Defendant is represented by his retained attorney, Finis Royal, and the jury is qualified, struck and twelve (12) jurors seated in the jury box. One of the questions propounded on voir dire examination of the jury venire by defense counsel was in substance ‘have you or any member of your family been subjected to violence or a crime of violence’. Two jurors responded in the affirmative. These two were struck by the Defendant. After the jury was seated in the box, but before any indictment was read, witnesses sworn or any testimony of any kind was offered, one juror notified the Court that his half-brother had been killed during the rights of blacks in Miami, Florida, and that their trial was to be conducted in Miami this week and that he doubted that he should be sitting on this case. This Defendant in this case is a black man who is charged with killing another black man. The Court makes known to the attorneys and the defense counsel objects to being tried by this jury. This jury is excused and a new jury will be' struck, Wednesday, September the 17th, 1980, at 9:00 o’clock A.M. and the ease' will be tried at that time.’ Another entry on 9-17-80 ‘The jury was re-struck. The case was tried and the jury verdict was guilty of murder and the Defendant is judged to be guilty and charged in the indictment and a sentence hearing is set for September the 18th, 1980, at 9:00 o’clock A.M.’ These matters are matters of record in this Court. They were matters that were entered in the record long ago and long before any of these questions were raised. They truly reflect what did happen. The Court’s memory of the matter concerning the jury thing is that the man was seated in the jury box and that he stood up and came around to the bench and informed the Court that he needed to talk with me and I called defense counsel up there and he stated to me that some relative of his had been killed in Miami and that some person had been indicted for killing him and that the trial was coming up that week and the defense counsel stated that he didn’t think that it would be proper for that man to sit on the jury to try the case and it was continued without objection and without any question or reservation of *34 any kind. The case was appealed and was affirmed by the Court of Criminal Appeals. I don’t recall whether it was taken to the Alabama Supreme Court or not but the majority of these matters— some of them were raised on appeal. Most all of them could have been raised on appeal. The Court did not at any hearing or ever at any time make any comment about the Defendant ‘acting like a white man,’ or ‘dating white girls’. The only mention ever made of that by the Court — well, the mention of those statements were made by the defense counsel and the Court granted the motion to Strike and did not consider those facts in its ruling on the Youthful Offender Application or on any other application or on the aspects of the case for that matter. The petition(s) for Writ of Error Coram Nobis are denied.”
Notwithstanding the fact that the petitioner and some of the witnesses for the petitioner on the coram nobis hearing may have thought or understood that the highly objectionable, derogatory racial remarks quoted hereinabove could have been reflective of the attitude of the trial judge or some one on the panel provided for the selection of the jury for trial of this case, we are fully convinced that they did not, that no action of the trial court or of any of the actual or prospective jurors in the case was influenced in the least by such derogatory statements. Furthermore, there is nothing to indicate in the transcript or the record proper that defendant’s retained attorney on his trial was in any respett derelict in his duties in representing defendant.
Not only should the trial court not be reversed for its denial of the petition for writ of error coram nobis, but it should be commended for its granting an evidentiary hearing and in its recital of the contents of the record of the proceedings in the case in which petitioner was convicted, which constitute a refutation of all material portions of the coram nobis petitions. “A court may take judicial notice of its own records.” Stephens v. State, Ala.Cr.App., 420 So.2d 826, 828 (1982); Shadle v. State, 284 Ala. 138, 222 So.2d 722 (1969).
The judgment of the trial court denying the petitions for writ of error coram nobis should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.